United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Division for the Purpose of 
 Appointing Independent Counsels

 Ethics in Government Act of 1978, As Amended

 ---------

 Filed June 15, 2001

 Division No. 95-1

 In re: Henry G. Cisneros

 ---------

 Before Sentelle, Presiding, and Fay and Cudahy,* Senior 
Circuit Judges.

 O R D E R

 Pursuant to the Independent Counsel Reauthorization Act 
of 1994, 28 U.S.C. ss 591-599 (1994), the court, on its own 
motion, concludes that termination of the Office of Indepen-
dent Counsel in the above-captioned matter is not currently 
appropriate under the standard set forth in 28 U.S.C. 
s 596(b)(2).

 Per Curiam

 For the Court:

 Mark J. Langer, Clerk

 By:

 Marilyn R. Sargent

 Chief Deputy Clerk

__________
 * Senior Judge Cudahy has filed a separate concurrence.

 Cudahy, Senior Circuit Judge, concurring:

 The question whether it would be appropriate for this 
judicial panel to terminate the Office of the Independent 
Counsel in this matter is for me difficult and perplexing. 
And this is a responsibility that should be of the most crucial 
importance.

 Independent Counsel Barrett was appointed in May 1995 to 
investigate alleged false statements to the Federal Bureau of 
Investigation by then-Secretary of Housing and Urban Devel-
opment Henry Cisneros. The original grant of jurisdiction to 
Mr. Barrett also covered investigation of the possible related 
offense of obstruction of justice and of other possible related 
crimes by any persons or entities arising out of the probe of 
Mr. Cisneros. There were two subsequent grants of jurisdic-
tion purporting specifically to cover alleged related income 
tax matters and essentially reasserting the scope of the 
investigation originally authorized. The last of these jurisdic-
tional grants is dated March 26, 1997.

 On September 9, 1999, Mr. Cisneros pleaded guilty to a 
misdemeanor and paid a fine of $10,000.00. For all practical 
purposes, this seems to have completed the proceedings with 
respect to Mr. Cisneros. Presumably, any involvement of 
Mr. Cisneros himself in related offenses such as obstruction 
of justice would have been known at the time of the plea 
bargain. However, since then, Mr. Barrett has continued an 
apparently wide-ranging probe of government officials who 
might, in his view, have sought to shield Mr. Cisneros. Some 
press accounts suggest that these continuing inquiries have 
met with diminishing returns but describe Mr. Barrett as 
maintaining an active grand jury process, which in his view is 
making unspecified but "substantial" progress.

 It has been six years since Mr. Barrett began his investiga-
tion. It has been four years since he received his last grant 
of jurisdiction, which only marginally expanded the scope of 
his efforts. In a few months, it will be two years since the 
investigation reached a culmination as to its principal target, 
Mr. Cisneros, with whom all accounts have now been settled. 
Mr. Barrett's office has been supported since its inception 
with almost $15,000,000 of the taxpayers' money, and he is 
now drawing down more than $1,000,000 every six months. 

Whether a cost-benefit analysis at this point would support 
Mr. Barrett's efforts is a question to which I have no answer. 
In any event, such an inquiry by this panel is apparently 
precluded under the now-expired independent counsel stat-
ute.

 There seems to be no doubt that Mr. Barrett's prosecutors 
are actively engaged before a grand jury. The strict terms of 
28 U.S.C. s 596(b)(2) apparently allow termination only if 
"investigations" and the resulting "prosecutions" have been 
completed; the grand jury stands at the intersection of these 
two processes. This state of affairs may be enough to 
determine our course at the present juncture, for the law 
literally construed may be that Mr. Barrett can go on forever 
so long as he claims or shows active grand jury activity, no 
matter how unpromising. Who is to contradict his evaluation 
that what he is doing is full of promise?

 The submission by Mr. Barrett justifying continuation of 
his probe is a virtual carbon copy of his submission last year 
in the same cause, except this year he expresses the "hope" to 
have a final report on Mr. Cisneros (but perhaps not others) 
by the end of the year. A great deal of time has elapsed and 
a lot of money spent in pursuing charges that on their face do 
not seem of overwhelming complexity. And the continuation 
of Mr. Barrett's efforts may indeed justify these lavish expen-
ditures if there is any prospect of unearthing skullduggery by 
officials to help Mr. Cisneros. But at this juncture under the 
terms of the statute, we apparently have little choice but to 
accept representations of productive activity at face value 
despite persuasive reasons for doubt.